**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MERCEDES FISHER,                          :
                                          :
          Plaintiff,                      :          CIVIL ACTION
                                          :
v.                                        :          NO. 18-CV-04653
                                          :
CATHOLIC SOCIAL SERVICES                  :
OF THE ARCHDIOCESE                        :
OF PHILADELPHIA, et al.                   :
                                          :
          Defendants.                     :


<u>**MEMORANDUM AND ORDER**</u>

**Joyner, J.**                                    **August   7, 2019**

     Before the Court are Plaintiff's First Amended Complaint
(Compl., Doc. No. 7), Defendants' Motion to Dismiss, Plaintiff's
Opposition thereto (Doc. No. 11), Defendants' Reply (Doc. No.
12), and Plaintiff's response thereto (Doc. No. 14).  For the
reasons outlined herein, the Court hereby GRANTS Defendants'
Motion with respect to Counts I, IV, V, VI, VII, VIII, and IX,
and GRANTS IN PART Defendants' Motion with respect to Count II.

**I. BACKGROUND**

     Plaintiff Mercedes Fisher ("Fisher") is an African-American
female and practicing Muslim.  Doc. No. 8-2 at ¶2.  In December
2016, Fisher was hired as a Mental Health Youth Care Worker by
Defendant St. Francis – St. Vincent Homes for Children ("St.
Francis").  <u>Id.</u> at ¶16.  Defendant St. Francis, a group home

1

that provides services to dependent and emotionally troubled minor-boys, is a business organization existing under the umbrella of the Catholic Services of the Archdiocese of Philadelphia ("Archdiocese"). Id. at ¶¶3-6. Fisher's responsibilities as a Mental Health Youth Care Worker at the many group homes she worked for include providing food, medication, transportation, and general care to the minor-residents. Id. at ¶13.

After working in three group homes in Philadelphia, Pennsylvania, id. at ¶19, Fisher was transferred in September 2017 to the McGlade House in Bucks County, Pennsylvania. Id. at ¶20. The McGlade House has a wide reputation of same-sex sexual relationships between the minor-resident boys. Id. at ¶¶20-22. During her employment at the McGlade House, Fisher allegedly observed other Mental Health Youth Care Workers make homophobic and derogatory comments to the minor-residents. Id. at ¶¶23-28. Following an altercation between another co-worker and a minor-resident, id. at ¶¶43-47, Fisher sent a report with a picture of the assault to her supervisors, including Defendant Collete Wade. Id. at ¶48. However, Plaintiff was later terminated by Defendant supervisor Jim Logan ("Logan") for failing to intervene during the altercation. Id. at ¶¶53-55. Believing she was wrongfully terminated, Fisher submitted a Charge of

Discrimination to the Equal Employment Opportunity Commission ("EEOC").  Id. at ¶¶56-57.  This civil lawsuit followed.

A. EEOC Charge of Discrimination

On July 21, 2018, Plaintiff Fisher submitted a Charge of Discrimination to the EEOC, which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC") and the Philadelphia Commission on Human Relations.  Doc. No. 8-2.  As part of the initial Intake Questionnaire, Fisher checked the boxes for race/color, sex, and religious discrimination and retaliation; under the September 29, 2017 "date of discrimination," she checked "continuing action."  Fisher also attached supplemental allegations supporting her Charge.  Id.

In her supplemental attachment, Fisher states she was transferred to the McGlade House in Bucks County in September 2017.  Id. at ¶¶19-20.  Upon her arrival at the McGlade House, she witnessed homophobic and derogatory comments made by other Mental Health Youth Care Workers towards the minor-residents, which created a pervasive atmosphere of intolerance.  Id. at ¶¶23-28.  Specifically, on September 20, 2017, Fisher observed a heightened state of tension between Carlton Irving ("Irving"), a Mental Health Youth Care Worker, and a minor-resident.  Id. at ¶¶28-37.  An emergency meeting was held to address the escalated tension, where Fisher alleges that although Irving said he was close to losing control and pled for help to control his temper,

his behavior was inadequately addressed by staff and supervisors.  Id. at ¶¶38-41.

The following day, after the minor-resident attempted to resolve the tension between him and Irving, id. at ¶43, Irving "lost all control" and began choking the minor-resident.  Id. at ¶¶44, 45.  While Rasheed, another Mental Health Youth Care Worker, attempted to control Irving, Fisher photographed the assault.  Id. at ¶¶45, 49.  She then removed the minor-resident to another room.  Id. at ¶47.  Believing she was following protocol, she forwarded the picture to her supervising manager, Defendant Collete Wade ("Wade").  Id. at ¶¶48-49. However, Wade only called Irving and asked him to leave the McGlade House for the night.  Id. at ¶51.  At a subsequent meeting, Fisher alleges she was criticized for failing to stop Irving's assault by her supervising director, Defendant Logan.  Id. at ¶¶53-55.

On September 29, 2017, Fisher was terminated "for failure to attempt to deescalate a situation where a staff member and resident were having a physical altercation."  Id. at ¶55. Fisher claims this explanation was pretextual, and that she was terminated because of her race, religion and gender.  Id. at ¶¶56, 57.  Further, she avers that her termination was retaliation for reporting Irving's assault, as Defendants were more concerned with deleting the picture she sent than addressing Irving's conduct.  Id. at ¶¶58-60.  Fisher concludes

the EEOC Charge by claiming that the events she describes in her Charge are just "some examples" of the discrimination and retaliation she was subjected to.  Id. at ¶69.  On August 1, 2018, the EEOC issued Fisher a Dismissal and Notice of Right to Sue.  Doc. No. 8-3.

B. Plaintiff's Amended Complaint

On October 29, 2018, Plaintiff filed a civil complaint and a subsequent Amended Complaint, containing essentially the same factual allegations against Defendants as those in her EEOC Charge.  However, Fisher notably avers additional allegations, including: First, the discrimination she was subjected to, based on her race/color, religion, gender and national origin, began from the onset of her employment at the Philadelphia group homes.  Compl. ¶¶25, 29, 34. Second, a situation of a discriminatory disciplinary policy, where she and another Muslim employee were disciplined for giving their phone number to a resident, when other Caucasian employees were not reprimanded. Id. ¶¶25, 31-33. Third, multiple statements of her opposition to the discrimination her co-workers and supervisors directed towards the minor-residents, ultimately resulting in her being ridiculed.  Id. ¶¶41, 46. Fourth, a belief that Defendant Logan's conduct was motivated by her sex, gender, religion, race/color, and national origin.  Id. ¶¶75-79. And finally, a

belief that Defendant Wade's conduct was severe and pervasive as to create a hostile work environment.  Id. ¶87.

Plaintiff Fisher's Amended Complaint brings nine individual causes of action against Defendants Archdiocese, St. Francis, Wade, and Logan (collectively "Defendants").  Plaintiff alleges that Defendants' discriminatory and retaliatory conduct was motivated by her race in violation of 42 U.S.C. §1981 (Count I). Id.  ¶¶106-109.  Pursuant to 42 U.S.C. §§2000e – 2000e(17) ("Title VII"), Plaintiff alleges the Defendants Archdiocese and St. Francis discriminated against Plaintiff because of her race, color, religion and national origin (Count II), id. ¶¶110-113, and engaged in unlawful retaliation because of her opposition to protected activities under Title VII (Count III).  Id. ¶¶114-116.  Additionally, Plaintiff brings state and local claims, alleging that Defendants violated the Philadelphia Fair Practices Ordinance by discriminating (Count IV), retaliating (Count V), and inciting others to discriminate (Count VI) against Plaintiff.  Id. ¶¶117-123.  Finally, Plaintiff alleges Defendants violated the MCARE Act (Count VII), id. ¶¶127-130, the Pennsylvania Whistleblower Law (Count VIII), id. ¶¶131-135, and common law for wrongful termination adverse to Pennsylvania public policy (Count IX).  Id. ¶¶136-143.

Defendants make several arguments in their Motion to Dismiss. (Defs. Mot., Doc. No. 8-1).  In large part, Defendants

argue that Plaintiff has not alleged sufficient facts to meet the pleading standard for each substantive cause of action. Defs. Mot. at 16-22. Additionally, Defendants contend that many claims are barred because Plaintiff either failed to exhaust her administrative remedies, Defs. Mot. at 12-15, or failed to file within the statute of limitations. Defs. Mot. at 7-9. Finally, Defendants move to strike punitive damages from each individual claim. Defs. Mot. at 23.

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1331. It has supplemental jurisdiction under 28 U.S.C. §1367 for the state and local law claims.

## II. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion, a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

**III. DISCUSSION**

A. 42 U.S.C. §1981 and Title VII Claims

Counts I, II, and III assert claims pursuant to 42 U.S.C. §1981[1] and Title VII under three different theories: discrimination, retaliation, and hostile work environment. "[T]he substantive elements of a claim under §1981 are generally identical to the elements of an employment discrimination claim under Title VII."  Brown v. J. Kaz, Inc., 581 F.3d 175, 182 (3d Cir. 2009) (alterations in the original).  The Court addresses each theory in part, with specific regard to each of Defendants' arguments raised in their motion to dismiss.

---

[1] §1981 provides that all persons within the jurisdiction of the United States are guaranteed the same freedom enjoyed by white citizens of the United States, including the freedom to make and enforce contracts.  42 U.S.C. §1981.  The Civil Rights Act of 1991 extended the protection of §1981 to post-formation conduct, including the termination of contracts.  Jones v. Arbor, 820 F. Supp. 205, 206 (E.D. Pa. 1993).

1. Discrimination Pursuant to §1981 and Title VII

To assert an employment discrimination claim under both §1981 and Title VII, a plaintiff must set forth facts establishing that the alleged disparate treatment was the result of "intentional" or "purposeful" discrimination. Weldon v. Kraft, 896 F.2d 793, 796 (3d Cir. 1990). Absent direct evidence of intent, discrimination can be proven through the prima facie framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973). A plaintiff makes out a prima facie case by showing: (1) that he was a member of a protected class; (2) that he was qualified for the job; and, (3) another person, not in the protected class, was treated more favorably. Connelly v. Lane Constr. Corp., 809 F.3d 780, n.5 (3d Cir. 2016).

While the McDonnell framework is well-established, discrimination cases are not limited to one set of criteria and may be established in other ways. Lewis v. Univ. of Pittsburgh, 725 F.2d 910, 914 n.4 (3d Cir. 1983). "The Third Circuit has in fact admonished courts to avoid mechanical applications of the standard." EEOC v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990). At the motion to dismiss stage, "a complaint need not establish a prima facie case in order to survive a motion to

dismiss."[2] Connelly, 809 F.3d at 788 (citing Makky v. Chertoff, 541 F.3d 205, 213-214 (3d Cir. 2008)).  Rather, because it may be difficult for a plaintiff to prove discrimination before discovery has unearthed relevant facts and evidence, a plaintiff is only required to plead enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of discrimination.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); see e.g., Castleberry v. STI Grp., 863 F.3d 259 (3d Cir. 2017); Connelly, 809 F.3d at 788; Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

> i. Exhaustion of Administrative Remedies – National Origin
> and Conduct Prior to September 2017

Defendants contend that Count II and III's national origin claims under Title VII must be dismissed because Plaintiff failed to exhaust her administrative remedies when she neither checked the box, nor raised "national origin" as a type of alleged discrimination in her EEOC Charge.  Defs. Mot. at 12, 13.  Similarly, Defendants maintain that because Plaintiff's EEOC Charge does not contain any examples of discrimination prior to September 2017, Counts I, II, and III involving conduct

---

[2] "A determination whether a prima facie case has been made . . . is an evidentiary inquiry — it defines the quantum of proof [a] plaintiff must present to create a rebuttable presumption of discrimination.  Even post Twombly, it has been noted that a plaintiff is not required to establish the elements of a prima facie case."  Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009).

prior to September 2017 must be dismissed for failure to exhaust administrative remedies.  Defs. Mot. at 13, 14.

Nonetheless, a plaintiff's failure to check a box on an EEOC Charge Form does not automatically preclude a Plaintiff from pursuing these claims in a subsequent civil lawsuit.  <u>Hicks v. ABT Assocs., Inc.</u>, 572 F.2d 960, 963, 966 (3d Cir. 1978). Rather, the flexible bounds of the lawsuit are defined by the scope of the EEOC investigation which can reasonably be expected to grow from the EEOC charge, regardless of the actual scope of the EEOC investigation.  <u>See</u> <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 398-399 (3d Cir. 1976).  The Third Circuit has consistently allowed plaintiffs to pursue claims not formally alleged in the Charge, so long as the claims are reasonably related to the facts contained in the Charge.  <u>Anjelino v. New York Times Co.</u>, 200 F.3d 73, 94-95 (3d Cir. 1999).  The purpose behind this liberal construction is to avoid punishing plaintiffs for unreasonable or less than thorough EEOC investigations.  <u>Hicks</u>, 572 F.2d at 966.

Here, Plaintiff's EEOC Charge contained no indication that she wished to pursue a national origin discrimination claim. Not only was the relevant box not checked off, Doc. No. 8-3 at 4, but the supplemental attachment only discussed race, color, gender, and religious discrimination and retaliation.  <u>Id.</u> at ¶2.  Merely checking a box on an EEOC Charge does not serve as a

11

'catch-all' for any and all possible forms of discrimination, especially without any supporting allegations. The Charge identified Plaintiff as "an African American female, a practicing Muslim and a member of the Muslim faith", id., yet made no mention of her national origin or how other co-workers of a different national origin were treated more favorably. More so, Plaintiff concedes that she was terminated because of her race, religion, gender, but does not mention any identifying characteristic of her national origin. Id. at ¶57. Thus, there is no plausible way the EEOC would have known that Plaintiff sought to bring a national origin claim. Thus, Defendants' motion to dismiss the Complaint's national origin claims in Count II and III are granted for failure to exhaust administrative remedies.

Similarly, Plaintiff failed to exhaust her administrative remedies regarding claims based on Defendants' conduct prior to September 2017. While Plaintiff both checks the box for "continuing violation," see infra Section III, Part A.3, and states that "the above are just some examples, [sic] of some of the discrimination and retaliation," the Charge only makes passing mention of prior employment and rather focuses solely on conduct during September 2017. Doc. No. 8-3 at ¶69. From the absence of any mention of her supervisors or co-workers before September 2017, it is reasonable to infer that an EEOC

investigation would not have encompassed possible instances of discrimination or retaliation prior to September 2017. Moreover, the Complaint's allegations of discrimination prior to September 2017 are suggestive of new or additional claims outside the scope. Because these allegations do not fall within the scope of the EEOC Charge, Plaintiff has failed to exhaust administrative remedies. Accordingly, while the conduct alleged during September 2017 is enough to survive Defendants' motion to dismiss Counts I, II and III, conduct prior to September 2017 is barred from being included in Plaintiff's claim moving forward.

ii. Race, Gender, and Religious Discrimination

Defendants contend that Plaintiff both fails to provide facts supporting her averment that she was terminated because of her race, and fails to identify a specific comparator implicating race/color discrimination. Defs. Mot. at 17, 18. They argue that accordingly, her racial discrimination claims pursuant to §1981 and Title VII in Counts I and II, respectfully, should be dismissed. Id. Similarly, Defendants maintain that although Count II's claim of Title VII gender and religious discrimination identifies comparators, it should still be dismissed because no identified comparator is "similarly situated." Id. at 18, 19.

Absent direct evidence, "[d]iscrimination may be inferred based on comparator evidence – evidence that defendant treated

'similarly situated' individuals not within plaintiff's
protected class more favorably than it treated plaintiff."
Darby v. Temple Univ., 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016)
(citing Wilcher v. Postmaster Gen., 441 F. App'x 879, 881 (3d
Cir. 2011)).  While similarly situated does not mean identically
situated, the plaintiff must nevertheless be similar in all
relevant aspects.  Golod v. Bank of Am. Corp., 403 F. App'x 669,
702 (3d Cir. 2010).  The relevant factors to guide a court's
determination of 'similarly situated' include: "the employee's
job responsibilities, the supervisors and decision-makers, and
the nature of the misconduct engaged in."  Wilcher, 441 F. App'x
at 882.

Here, Plaintiff fails to either provide direct evidence
that she was terminated because of her race or allege any
instance where a similarly situated non-African American
employee received favorable treatment.  Rather, Plaintiff makes
bare allegations that "other similarly situated white employees"
were given preferential treatment, favored, or received less
discipline for conduct that was "far more severe."  Compl. ¶¶25,
29, 32, 33, 86; see Angelini v. U.S. Facilities, Inc., No. 17-
4133, 2018 U.S. Dist. LEXIS 107615 (E.D. Pa. 2018).  Merely
alleging these bald statements without identifying any
comparators or how they were similarly situated is exactly a
"[t]hreadbare recital[] of the elements of a cause of action"

14

that _Iqbal_ repudiates.  _See_ _Iqbal_, 556 U.S. at 678.  In fact, all the identified persons that Plaintiff attempts to draw parallels to are African-American.  Compl. ¶86.  In light of the lack of requisite factual allegations, the Complaint does not satisfy the fourth element of a racial discrimination claim under §1981 and Title VII.  Consequently, Defendants' motion to dismiss Counts I and II with respect to racial discrimination is granted.

However, the Complaint does establish a plausible inference that Defendants' discriminatory conduct was based on Plaintiff's gender and religion.  Plaintiff alleges that she was open about her Muslim faith from the onset of her employment.  Compl. ¶30; _see_ _Darby_, 216 F. Supp. 3d at 542-3.  In addition, Plaintiff provides concrete factual allegations from which gender and religious discrimination can be inferred.  Plaintiff alleges that she and another Muslim mental health youth worker were disciplined for giving minor-residents their phone numbers, while other youth workers received little or no discipline for identical conduct.  Compl. ¶30-33.  Moreover, she identifies multiple similarly situated mental health youth workers who received less, or no, discipline for engaging in comparable or

more severe conduct[3]: Latanya Wright, a non-Muslim African-American woman employed as a mental health youth worker, was suspended with pay when a call was made to the child abuse hotline accusing her of taking inappropriate pictures of boys in the bathroom.  Compl. ¶86; and similarly, Rashard, a non-Muslim African-American male employed as a mental health youth worker, was suspended for making discriminatory comments about the minor-residents' sexuality. Similarly, Rashard was suspended with pay for striking a child.  Id.

Defendants rely on the mistaken premise that 'similarly situated' must mean "identical" rather than "similarly situated in all relevant aspects."  Defs. Mot. at 19.  However, an inference of unlawful discrimination can rise from alleging that a similarly situated employee who committed more serious offenses received lesser disciplinary sanctions or no sanctions at all.  E.g., Robinson v. Amtrak, 880 F. Supp. 2d 575, 581 (E.D. Pa. 2012); Darby, 216 F. Supp. 3d at 542-3.  While at this stage we decline to weigh on the severity of Plaintiff's or the identified comparators' misconduct, it is reasonable to infer that Defendants' acted with a discriminatory animus when similarly situated employees who were not Muslim women received

---

[3] Additionally, Plaintiff alleges instances of discriminatory disciplinary policies involving Collette Wade.  Compl. ¶86.  However, Collette Wade is Plaintiff's supervisor, Compl. ¶14, and therefore is not similarly situated. See Mandel v. M&O Packaging Corp., 706 F.3d 157 (3d Cir. 2013).

no discipline for analogous conduct.  Therefore, Defendants'
motion to dismiss Count II's gender and religious discrimination
claims is denied.

    2. Retaliation Pursuant to §1981 and Title VII

    The anti-retaliation provision of 42 U.S.C. §1981 and Title
VII protect those who participate in certain §1981 or Title VII
proceedings (the 'participation clause'), and those who oppose
discrimination made unlawful by §1981 or Title VII (the
'opposition clause').  <u>Moore v. City of Philadelphia</u>, 461 F.3d
331, 340-41 (3d Cir. 2006) (citing <u>Slagle v. Cnty. of Clarion</u>,
435 F.3d 262, 266 (3d Cir. 2006)).  While retaliation claims
pursuant to both statutes share a similar framework[4], opposition
to a specific type of discrimination is distinct for each. While
Title VII prohibits employers from retaliating against employees
for opposing discrimination based on race, color, religion, sex,
or national origin, 42 U.S.C. §2000e-3(a), §1981 only prohibits
retaliation against employees for opposition to racial
discrimination.  <u>Long v. Spalding Auto. Inc.</u>, 337 F. Supp. 3d
485 (E.D. Pa. 2018).

    As a prerequisite to a §1981 and Title VII retaliation
claim, a plaintiff must first demonstrate that there had been an

---

[4] As previously stated, <u>see supra</u> Section III, Part A, retaliation under both
§1981 and Title VII apply the same prima facie elements.  <u>Humphries v. CBOCS
West, Inc.</u>, 474 F.3d 387, 403-04 (7th Cir. 2007), <u>aff'd</u>, 553 U.S. 442 (2008).

underlying statutory violation.  <u>CBOCS West, Inc. v. Humphries</u>,
553 U.S. 442, 454 (2008).  Next, a plaintiff is required to
establish that "she had a prima facie case by tendering evidence
that (1) she engaged in protected activity, (2) her employer
took an adverse employment action against her, and (3) there was
a causal connection between her participation in the protected
activity and the adverse employment action."  <u>Estate of Oliva v.</u>
<u>N.J., Dep't of Law & Pub. Safety, Div. of State Police</u>, 604 F.3d
788, 798 (3d Cir. 2010) (citing <u>Moore</u>, 461 F.3d at 340-341)
(alterations in the original).

Defendants contend that Plaintiff's retaliation claims fail
because she did not engage in any protected activity iterated in
the first element.  Protected activity may consist of "formal
charges of discrimination as well as informal protests of
discriminatory employment practices, including making complaints
to management."  <u>Barber v. CSX Distrib. Servs.</u>, 68 F.3d 694, 702
(3d Cir. 1995) (internal quotations omitted).  To determine if a
plaintiff sufficiently "opposed" discrimination, "we look to the
message being conveyed rather than the means of conveyance."
<u>Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.</u>, 450,
F.3d 130, 135 (3d Cir. 2006).

While all complaints or protests must be more than just
general complaints of unfair treatment, there is no hard and
fast rule as to whether the conduct in a given case is

protected. <u>Barber</u>, 68 F.3d at 701-02. Rather, it must simply

be apparent that the employee holds an objectively reasonable

belief, in good faith, that the activity they oppose is

unlawful. <u>Clark Co. v. Breeden</u>, 532 U.S. 268, 271 (2001) (per

curiam). Put short, an employee has engaged in a protected

opposition activity when she complains about unfair treatment

with specific reference to a protected characteristic as the

basis for the unfair treatment. <u>See</u> <u>e.g.</u>, <u>CBOCS West, Inc.</u>, 553

U.S. 442 (holding that §1981 extends past self-opposition to

racial discrimination and also reaches claims based on an

individual "who suffers retaliation because he has tried to help

a different individual who suffered direct racial discrimination

to secure that person's §1981 rights."); <u>Connelly</u>, 809 F.3d 780

(holding plaintiff engaged in a protected activity under Title

VII when she filed multiple complaints referencing sexual

harassment to her superiors); <u>Curay-Cramer</u>, 450 F.3d at 134-35;

<u>Barber</u>, 68 F.3d at 701-02; <u>Kier v. F. Lackland & Sons, LLC.</u>, 72

F. Supp. 3d 597, 616 (E.D. Pa. 2014).

Here, Plaintiff alleges that she was retaliated against due

to her protected activity under §1981, her opposition to

Defendants' unlawful employment practices. Compl. ¶109.

Initially, Plaintiff has failed to allege facts that would

support a §1981 violation for race/color discrimination. <u>See</u>

<u>supra</u> Section III, Part A.1. Moreover, Plaintiff has failed to

allege any facts demonstrating that she opposed any unlawful employment practices relating to race. The crux of the Complaint relies on allegations of discrimination that took place at the McGlade House. See generally Compl., Doc. No. 7. But, as Plaintiff concedes, the discriminatory conduct during this period was based on the minor-residents' gender and same-sex relationships, as well as Plaintiff's gender and religion. Compl. ¶¶36-68. Yet, the only allegation that Plaintiff opposed racial discrimination is in the form of conclusory statements of conduct prior to working at the McGlade House. Compl. ¶34. These bald statements cannot raise a reasonable expectation that discovery will reveal evidence that Plaintiff engaged in a protected activity under §1981. Accordingly, Count I of Plaintiff's Complaint with respect to retaliation will be dismissed.

Additionally, Count III alleges that Plaintiff was retaliated against because she opposed gender-based discriminatory practices unlawful under Title VII. Compl. ¶¶114-116. Defendants reason that this claim should be dismissed because Plaintiff's opposition was merely a "general complaint". Defs. Mot. at 21-22; see Kier, 72 F. Supp. 3d at 597. We are unconvinced by Defendants' diminished characterization of Plaintiff's opposition. Here, Plaintiff describes multiple attempts to report gender discrimination

against not only herself, Compl. ¶¶25, 29, but also her
opposition to the mistreatment of the minor-residents.  Compl.
¶¶ 37, 41, 46, 71, 78.  In other words, Plaintiff was opposing a
practice made unlawful by Title VII.  Defendants mistakenly
conclude that the mere reporting of a physical altercation does
not implicate opposition to discrimination.  Defs. Mot. at 21.
However, not only does Plaintiff describe the escalation of
events, Compl. ¶¶46-68, but she also alleges that her continued
opposition led to verbal abuse and her eventual termination.
Compl. ¶¶41, 82. Accordingly, Defendants' motion to dismiss
Count III's retaliation claim is denied.

    3. Hostile Work Environment

    Defendants maintain that Plaintiff's hostile work
environment claim under Title VII is precluded because she
failed to exhaust her administrative remedies by not including
this claim in her EEOC charge.[5]  Doc. No. 12 at 2-4.  Thus,
Defendants assert that because the scope of the EEOC charge does
not reasonably encompass this theory, the hostile work
environment claim must be dismissed.  Although Plaintiff's
Complaint does allege facts that could suggest a hostile work

---

[5] Although it is not abundantly clear that Plaintiff brings a hostile work
environment claim in her Complaint, and Defendants did not address such a
theory in their Motion to Dismiss, Defendants did file supplemental briefing
(Doc. 12) responding to this theory that was highlighted in Plaintiff's
Opposition to Defendants' Motion to Dismiss (Doc. 11).

environment, we agree that this claim does not fit within the scope of the EEOC charge and should therefore be dismissed.

As previously stated, see supra Section III, Part A.1, i, there are limitations on the presentation of new claims to the district court after filing a charge with the EEOC. See, e.g., Howze v. Jones & Laughlin Steel, Corp., 750 F.2d 1208, 1212 (3d Cir. 1984); Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996). A district court may assume jurisdiction over additional Title VII charges if they are reasonably within the scope of the claimants' original charge or if a reasonable EEOC investigation would have encompassed such claims. Antol, 82 F.3d at 1295. The Third Circuit has allowed for additional claims not specifically mentioned in the EEOC charge where there exists a close nexus between the facts supporting the claims raised in the charge and those in the complaint. See, e.g., Howze, 750 F.2d at 1212 (finding the claim in the civil suit that plaintiff was discriminated against because of her involvement with a "Black Caucus" explained the original EEOC charge, which alleged racial discrimination in job promotion); Ostapowicz, 541 F.2d at 398-99 (finding that additional charges of gender discrimination filed during the pendency of the administrative proceedings may be considered "explanations of the original charge and growing out of it.").

In the instant action, the EEOC charge alleged continuing abusive behavior by Plaintiff's co-workers directed towards minor-residents, which culminated in Plaintiff's termination due to reporting the abuse.  Doc. 8-3.  The question is whether Plaintiff's EEOC charge had alleged facts supporting a hostile work environment claim, or alternatively, whether the scope of an investigation would have encompassed a hostile work environment claim.

Reviewing Plaintiff's EEOC charge, the court finds, as a matter of law, that Plaintiff's hostile work environment claim fails to qualify under the above standard.  In no part of the EEOC charge does Plaintiff explicitly allege that she was subjected to continuing severe and pervasive behavior that would support a claim of hostile work environment.  Similarly, a hostile work environment claim does not fall fairly within the scope of a reasonable EEOC investigation.

First, there is no close nexus between the facts supporting Plaintiff's EEOC charges of race, religion, or sex discrimination and those supporting her Complaint's hostile work environment claim.  Plaintiff's EEOC charge is silent on how 'her' termination or continual exposure to severe and pervasive behavior resulted from 'her' own immutable characteristics as a

member of a protected class.[6]  (emphasis added).  Rather, her

EEOC charge details continued discrimination directed at minor-

residents because of their protected status.  Doc. 8-3 at ¶¶23-

47.  Second, an EEOC investigation of Title VII discrimination

and retaliation would not have disclosed the hostile work

environment claim.  Although Plaintiff checked the box for

"continuing violation," Doc. 8-3 at 4, the attached supplemental

explanation supports the conclusion that the minor-residents,

not Plaintiff, were exposed to a 'continuing' hostile

environment because of the discrimination.

　　　Further, Plaintiff's EEOC charge only avers a sole instance

where she was subjected to alleged hostile behavior by Defendant

Wade.  Id. at ¶61.  Though the Third Circuit has held that sole

incidents can rise to the level of a hostile work environment,

these cases involve extreme behavior that is reflective of a

continuing "severe and pervasive" environment.  See Castleberry,

863 F.3d at 264-5; Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d

Cir. 2006).  Here, however, the Charge's sole example that

---

[6] To prove the existence of a hostile work environment, the plaintiff must
establish that: (1) she suffered intentional discrimination because of their
protected status; (2) the discrimination was severe or pervasive; (3) the
discrimination detrimentally affected her; (4) the discrimination would
detrimentally affect a reasonable person of the same status in the same
position; and, (5) defendant is liable under the doctrine of respondeat
superior.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  This
theory addresses continued adverse actions against an employee because of
their protected status, rather than creates a cause of action for mere
unpleasantness or mistreatment in the workplace unmotivated by the
plaintiff's statutorily-protected trait.  See Faragher v. City of Boca Raton,
524 U.S. 775 (1998); Shramban v. Atena, 115 F. App'x 578, 580 (3d Cir. 2004).

Defendant Wade had Plaintiff remain at work even though she was ill fails to show extreme conduct reflective and indicative of a hostile work environment.

Finally, a hostile work environment claim does not flow logically from, and would have required investigation of events not raised by, Plaintiff's claims of Title VII retaliation and discrimination. This additional theory, while potentially supported by facts alleged in her Complaint, is neither fairly within the original charge, nor can be said to reasonably grow out of it. See Ostapowicz, 541 F.2d at 399. Because it is unreasonable to allow Plaintiff to include in her Complaint claims neither supported nor within the scope of her EEOC charge, Plaintiff's hostile work environment claim must be precluded. Accordingly, Plaintiff's hostile work environment theory is dismissed with prejudice for failing to exhaust her administrative remedies.

B. Counts IV, V, and VI: Philadelphia Fair Practices Ordinance

Relatedly, Plaintiff brings Counts IV, V, and VI pursuant to the Philadelphia Fair Practices Ordinance[7] ("PFPO") against all Defendants for discrimination, inciting discriminatory conduct, and retaliation. Compl. ¶¶117-123. Defendants move to

---

[7] The Philadelphia Fair Practices Ordinance, codified under Phila. Code §9-1100, is available at: https://www.phila.gov/HumanRelations/PDF/FPO%20Ch9-1100%20-9-2016_%20nc.pdf.

dismiss all three claims, arguing that the discrimination alleged to have occurred in Philadelphia occurred prior to September 2017.  Defs. Mot. at 12-15.  Thus, because Plaintiff has failed to exhaust her administrative remedies for conduct prior to September 2017, these claims must be dismissed.  Id.

The PFPO "only covers conduct that took place in the City of Philadelphia."  Doe v. WM Operating, LLC, No. 17-2204, 2017 U.S. Dist. LEXIS 123979, at *5 (E.D. Pa. 2017).  While the PFPO does not explicitly indicate that a plaintiff must exhaust her administrative remedies, courts within this circuit do "require plaintiffs to exhaust their administrative remedies" with the EEOC before filing a civil suit.  Ahern v. EResearch Tech., Inc., 183 F. Supp. 3d 663, 667-668 (E.D. Pa. 2016) (citing Richards v. Foulke Assocs., 151 F. Supp. 2d 610, 616 (E.D. Pa. 2001).

As previously discussed, see supra Section III, Part A.1.i, because the conduct prior to September 2017 does not fall within the scope of the EEOC Charge or the scope of a reasonable investigation, Plaintiff is precluded from including these claims in her Complaint.  Plaintiff concedes, as stated in both the Charge and the Complaint, that prior to working in the McGlade House in Bucks County in September 2017, she worked in three Philadelphia group homes.  Doc. No. 8-2 at ¶¶19-20. Logically, any discriminatory or retaliatory conduct to have

taken place in Philadelphia, and subsequently covered by the PFPO, must have occurred prior to September 2017. Accordingly, Defendants' motion to dismiss Counts IV, V, and VI of Plaintiff's Complaint is granted for failure to exhaust administrative remedies.

C. Count VIII: Pennsylvania Whistleblower Law

In Count VIII, Plaintiff alleges Defendants violated the statutory language of the Pennsylvania Whistleblower Law by engaging in unlawful and retaliatory conduct. Compl. ¶¶131–135. Defendants seek dismissal of this claim, arguing that Plaintiff failed to timely file within the 180-day statute of limitations period from the time of her termination. Defs. Mot. at 7-8.

The Pennsylvania Whistleblower Law provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 Pa. Cons. Stat. Ann. §1423(a). While §1423 gives public employees a cause of action against her employer for wrongful discrimination or retaliation, §1424 requires the employee to bring a civil action "within 180 days after the occurrence of the alleged violation." Id. at §1424.

Courts within the Third Circuit have consistently held that this "180-day time limit is mandatory and must be strictly

applied." <u>Brown v. Montgomery Cty.</u>, 470 F. App'x 87, 89 (3d Cir. 2012); <u>see, e.g.</u>, <u>Danon v. Vanguard Grp., Inc.</u>, No. 15-6864, 2016 U.S. Dist. LEXIS 67773 (E.D. Pa. 2016), <u>rev'd on other grounds</u>, 686 F. App'x 101 (3d Cir. 2017); <u>Graddy v. Children's Home of Easton</u>, No. 13-4432, 2016 U.S. Dist. LEXIS 2127 (E.D. Pa. 2016).  Consequently, a claim is barred where a Defendant raises a statute of limitations defense in a 12(b)(6) motion, and the pleading facially shows noncompliance with the limitation period.  <u>Brown</u>, 470 F. App'x at 90.  Here, Plaintiff has filed this civil action well after the 180-day statute of limitations period, which began upon her termination on September 29, 2017[8].  Further, no prior case law points to the statute of limitations period being tolled until a right to sue is granted from the EEOC.  Even if this was the case, Plaintiff still failed to file this cause of action within the period.[9] Accordingly, Count VIII pursuant to the Pennsylvania Whistleblower Law is dismissed, with prejudice; the merits of this claim need not be resolved.

D. Count VII: MCARE Act

Relatedly, Count VII alleges that Defendants engaged in unlawful retaliatory conduct by terminating Plaintiff in

---

[8] As previously noted, Plaintiff initiated this action on October 29, 2018, which is 395 days after the alleged retaliatory act, i.e. her termination.
[9] The EEOC Charge of Discrimination was filed on July 21, 2018, which is 295 days after the alleged retaliatory act, i.e. her termination.

violation of the Medical Care Availability and Reduction of Error Act ("MCARE") for reporting a serious incident involving minor-residents' safety. Compl. ¶¶127-130. The MCARE Act provides in relevant part as follows: "health care worker who reports the occurrence of a serious event or incident . . . shall not be subject to any retaliatory action for reporting the serious event or incident and shall have the protections and remedies set forth in . . . the Whistleblower Law." 40 Pa. Cons. Stat. Ann. §1303.308(c).

As previously explained, see supra Section III, Part C, the Pennsylvania's Whistleblower Law generally provides a civil cause of action for an employee whose public employer retaliates for reporting the employer's "wrongdoing". Accordingly, retaliation-based claims brought under the MCARE Act are also subject to the Whistleblower's 180-day statute of limitations requirement. See Gillispie v. RegionalCare Hosp. Partners Inc., 892 F.3d 585, 599 (3d Cir. 2018). Plaintiff's claim pursuant to the MCARE Act, like her Pennsylvania Whistleblower Law claim, was filed 395 days after the alleged retaliation. Compl. ¶¶22, 80. Identically, Plaintiff has failed to comply with the 180-day statute of limitations and is thus barred from bringing such claim. Defendants' motion to dismiss Count VII is granted with prejudice.

E. Count IX: Common Law "Wrongful Termination"

Lastly, Count IX alleges Defendants violated Pennsylvania public policy by wrongfully terminating Plaintiff after reporting child abuse in a mental health facility. Compl. ¶¶136-143. Defendants move to dismiss this claim, arguing that there is neither a Pennsylvania common law cause of action for wrongful termination, nor could one exist where a statutory remedy is already available. Defs. Mot. at 10-12.

Indeed in Pennsylvania, there is no common law cause of action for wrongful termination "unless the dictates of public policy, contract, or a statutory provision" prohibit such termination. Gillispie, 892 F.3d at 597. However, Pennsylvania courts have consistently held that the availability of a statutory remedy precludes any reliance on the public policy exception. Id.; see also Murray v. Commercial Union Ins. Co. (Commercial), 782 F.2d 432, 436-37 (3d Cir. 1986). In short, wrongful termination claims that "are cloaked in the rhetoric of public policy" are prohibited as common law claims for violation of public policy if they could have been brought under a statute. Gillispie, 892 F.3d at 597. The Third Circuit has explained that "[i]f a common law action for the same claims were recognized, it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures."

<u>Bruffett v. Warner Communications, Inc.</u>, 692 F.2d 910, 919 (3d Cir. 1982).

Here, Plaintiff has statutory remedies under both the Pennsylvania Whistleblower Law and the MCARE Act for wrongful termination.  However, as previously discussed, both claims are barred because neither were filed within the 180-day statute of limitations period.  <u>See supra</u> Section III, Parts C, D. Therefore, the existence of two statutory remedies, regardless of Plaintiff's inability to pursue these claims, precludes the availability of a common law wrongful termination claim for Defendants' alleged violation of public policy.  Accordingly, Defendants' motion to dismiss Count IX is granted, with prejudice.

F. Punitive Damages

Plaintiff seeks punitive damages for all alleged causes of action.  <u>See generally</u> Compl., Doc. No. 7.  Defendants move to strike punitive damages, arguing that Plaintiff has failed to present any facts indicating that Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights.  Defs. Mot. at 23.  Because the only surviving claims are Count II, gender and religious discrimination, and Count III, retaliation, we need only address such.

Counts II and III bring Title VII claims against Defendants Archdiocese and St. Francis in their corporate capacity.  Compl.

¶¶110-116. Punitive damages are available in claims under Title VII, but are limited to cases in which the employer has engaged in intentional discrimination and has done so "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Kolstad v. ADA, 527 U.S. 526, 529-530 (1999). Here, Plaintiff alleges multiple instances where she reported the on-going child abuse at the McGlade House. Compl. ¶¶41, 46. Without the benefits of discovery, it is logical to conclude that Defendants Archdiocese and St. Francis knew Plaintiff both continually opposed the violation of the minor-residents' Title VII rights, and the subsequent retaliation she suffered. Yet, Defendants' failure to address the abuse, which is highlighted by Supervisor Defendants Logan and Wade's complacence in reprimanding Irving before he assaulted a minor-resident, surely meets the pleading standards of "reckless indifference." Compl. ¶¶59-63. Defendants' motion to strike punitive damages from Count II and III is denied.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss with respect to Counts I, IV, V, VI, VII, VIII, and IX, and GRANTS IN PART Defendants' Motion to Dismiss with respect to Count II. Defendants' Motion to Strike punitive damages from Counts II and III is DENIED. An appropriate order will follow.